

<u>Via ECF</u>                                                                                                          March 20, 2023
Honorable Jennifer L. Rochon

Re:   <u>Envy Branding LLC v. The William Gerard Group, LLC et al. No. 20-cv-3182</u>

Dear Judge Rochon:

We represent Plaintiff Envy Branding LLC ("Plaintiff" or "Envy"). We submit this letter to respectfully request permission to file a motion (a) for summary judgment, and (b) to exclude Defendants' designated expert from testifying at trial. In sum, there are no material facts in dispute upon Plaintiff's claims that require a trial on the merits. The only issues for the court to resolve pertain to the purely legal interpretation of unambiguous written contracts. Similarly, Defendants' purported expert witness, John Begakis, will not offer relevant or admissible expert testimony and is not qualified to be an expert, as set forth in greater detail below.

### A.   Undisputed Factual Background

Envy entered into separate written contracts with Defendants, The William Gerard Group, Chelsea Houska DeBoer ("Chelsea"), and her husband Cole DeBoer ("Cole"). The agreements between Chelsea and Envy (the "Chelsea Agreement") and between Cole and Envy (the "Cole Agreement" and collectively with the Chelsea Agreement, the "DeBoer Agreements") are identical except for the parties. The DeBoer Agreements designated Envy as both Chelsea's and Cole's sole and exclusive agent for negotiating Licensing Agreements.[1] Envy's compensation was 35% of revenue from all Licensing Agreements. The DeBoer Agreements also required Chelsea and Cole to, among other things, comply with all Licensing Agreements, direct the revenue to flow through Envy, and not to negotiate directly with prospective counterparties. The parties agreed to extend the DeBoer Agreements to Chelsea and Cole's children and companies, to the extent they negotiated and entered into Licensing Agreements.

The DeBoer Agreements also included a "tail" provision. As a result, Envy is entitled to receive 35% of any revenue generated after expiration of the DeBoer Agreements from Licensing Agreements that (a) were in effect during the term of the DeBoer Agreements, (b) were executed within one year after the term if the counterparty was contacted within the term, or (c) are extensions, amendments or renewals of Licensing Agreements that meet criteria (a) or (b).

Envy separately entered into an agreement (the "TWGG Agreement") with Defendant The William Gerard Group ("TWGG") for the mutual referral of clients to each other, and to advise upon each other's clients. TWGG and Envy agreed to share revenue from referrals and from advising upon each other's clients pursuant to a chart appended to the TWGG Agreement. With

---

[1] The DeBoer Agreements broadly define Licensing Agreements such that they apply to any agreement for the licensing of intellectual property owned by Cole and Chelsea including, among others, their "names, images, likenesses…and all other protectable ideas".

respect to Chelsea, Cole, their children, and their companies, the TWGG Agreement required Envy and TWGG to share revenue equally. Envy and TWGG also agreed not to perform services within each other's principal line of business.

During the term of the DeBoer Agreements, Chelsea and Cole collectively generated millions of dollars in revenue from Licensing Agreements. Most notably, they generated millions of dollars of revenue from Viacom and New Remote Productions pursuant to certain agreements and amendments entered into therewith (the "Viacom Agreements"). The plain terms of the Viacom Agreements required Chelsea and Cole to engage in conduct that falls within the definition of Licensing Agreements, including licensing, among other things, names, images, likeness, characters and other protectable ideas. Chelsea and Cole further generated substantial revenue from Licensing Agreements with numerous third parties. Envy both negotiated, and assisted Chelsea and Cole in complying with, all such agreements, including the Viacom Agreements. Envy's assistance stopped when Defendants interfered with Envy's ability to assist.

A dispute arose concerning Chelsea's and Cole's failure to pay Envy its portion of revenue generated from the Viacom Agreements. Defendant Dzombak, the owner of TWGG, was Chelsea and Cole's manager. He was also responsible for managing their relationship with Envy. In that role, Dzombak consistently represented, orally and in writing, that Envy would be paid its share of fees from the Viacom Agreements. Envy eventually began withholding certain payments to Chelsea and Cole because, among other reasons, Chelsea and Cole failed to pay Envy revenue they received from the Viacom Agreements, began negotiating directly with prospective counterparties, and began directing counterparties to withhold information and payments from Envy. Envy later learned that TWGG cut Envy out of the process. TWGG thus began negotiating, entering into, and collecting payments from Licensing Agreements in exchange for reducing the overall fee below 35%, but retaining all of it. Defendants thus shared the savings by cutting out Envy. The revenue Envy withheld is far less than the fees it is due—35% of revenue from the Viacom Agreements alone is many times greater than the amounts Envy offset.

Separately, Defendants counterclaim for certain legal fees for work performed by the law firm Haynes and Boone on behalf of Chelsea for her alleged violation of certain FTC regulations. There is simply no factual or legal basis for Defendants to assert these fees are Envy's responsibility.

B.  **Summary Judgment**

The summary judgment standard is well established and requires demonstrating that there are no material facts in dispute to resolve at trial. *See* Fed. R. Civ. P. 56(c) (summary judgment is warranted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits … show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *see also Korea Life Ins. Co. v. Morgan Guar. Tr. Co. of New York*, 269 F.Supp.2d 424, 435 (S.D.N.Y. 2003). Similarly, the standard for prevailing on a breach of contract claim is well established: the existence of a contract, performance by plaintiff, breach by defendant, and damages flowing from the breach. *DLJ Mortgage Capital Inc., v. Home Loan Corp.,* 667 F.Supp.2d 368 (S.D.N.Y. 2009).

As noted above, the parties do not dispute the existence of the contract, its enforceability, the actions of either side, nor the amount of revenue generated. Indeed, the parties exchanged extensive requests for admission that eliminated all, or nearly all, such disputes. The remaining issues for the court to resolve are the purely legal interpretation of unambiguous written contracts. Specifically, whether (a) the DeBoer Agreements carveout, as Defendants' contend, revenue from preexisting Licensing Agreements such as the original Viacom Agreements—there is no such carveout within the Chelsea and Cole Agreements and, regardless, Envy undisputedly worked on both the Viacom Agreements and amendments and extensions during the term, (b) whether Envy was entitled to withhold payments as an offset to sums owed to Envy and the impact of such offsets, (c) whether Defendants were permitted to terminate their agreements with Envy because Envy withheld payments as an offset, (d) whether TWGG breached the TWGG Agreement by representing its clients with respect to Licensing Agreements, and receiving revenue from Chelsea and Cole, but failing to share the revenue with Envy, and (e) to which revenue do the tail provisions of the DeBoer Agreements apply. These are not factual issues that require a factfinder—they only require the Court to interpret written contracts. Accordingly, summary judgment is appropriate.

### C. Defendants' Expert Witness Should Be Excluded

Defendants identified an attorney, John Begakis, as an expert witness. Mr. Begakis' proposed opinions are as to (a) the scope and interpretation of New York's Employment Agency Law (N.Y. Gen. Bus. Law. §170 *et seq.*), (b) the proper interpretation of the DeBoer Agreements, and (c) customary industry practice with respect to branding agreements, in California. First, Cole and Chelsea live and work in South Dakota. New York's law is inapposite. Second, even if New York's law applied, interpreting it is plainly a legal determination to be made by the Court. *In re LIBOR-Based Fin. Instruments Antitrust Litig.,* 299 F.Supp.3d 430, 469 (S.D.N.Y. 2018) (quoting *Nimely v. City of New York,* 414 F.3d 381, 397 (2d Cir. 2005). If Mr. Begakis wishes to argue the proper application of New York law, then he should appear as counsel and submit a brief, not offer testimony as a witness. Third, Mr. Begakis is not qualified to opine on New York law. He is a California attorney, who is not admitted in New York, has never litigated to conclusion any dispute concerning the relevant law, and has no special knowledge or experience with the law other than general legal research. Fourth, with respect to Mr. Begakis' contractual interpretation, and California branding/licensing industry practice, it is only purportedly relevant insofar as it impacts interpretation of the DeBoer Agreements. However, since those agreements are unambiguous written contracts, parole evidence, such as industry practice, or expert opinion, is inadmissible. *Morgan Stanley High Yield Securities, Inc. v. Seven Circle Gaming Corp.*, 269 F.Supp.2d 206, 213 (S.D.N.Y. 2003). Fifth, even if industry practice is admissible, Mr. Begakis proposes to testify based on his experience with California agreements and parties. As noted above, neither Cole, Chelsea, nor Envy reside, work, nor negotiated the relevant agreements, in California. California industry practice is thus wholly irrelevant to what a New York branding agency and South Dakota clients intended when entering into the DeBoer Agreements. Sixth, Mr. Begakis failed to engage in any scientific or replicable process in reaching his conclusions. *See Amorgianos v. National R.R. Passenger Corp.,* 303 F.3d 256, 265 (citing Fed. R. Evid. 702). Mr. Begakis therefore should not be permitted to testify.

Respectfully submitted,

*/s/ Matthew J. McDonald*
Matthew J. McDonald
Klehr Harrison Harvey Branzburg LLP
5 Penn Plaza, 23rd Floor
New York, NY 10001
mmcdonald@klehr.com
215-569-4287

cc: Peter T. Shapiro, Esq. (via ECF)